442 P.2d 119

**WELLS–STEWART CONSTRUCTION CO., Inc., a Nevada corporation; and the Travelers Indemnity Company, a Connecticut corporation, Appellants,**

**v.**

**MARTIN MARIETTA CORPORATION, a Maryland corporation; and the State of Arizona, for the use of Martin Marietta Corporation, Appellees.**

No. 8594.

Supreme Court of Arizona,
In Division.

June 20, 1968.

Rehearing Denied Sept. 24, 1968.

Fennemore, Craig, Allen & McClennen, by Calvin H. Udall, Phoenix, for appellants.

Dushoff, Sacks & Corcoran by Seymour Sacks, Phoenix, for appellees.

McFARLAND, Chief Justice:

Defendant-appellant Wells-Stewart Construction Co., Inc., hereinafter referred to as Wells, contracted with the State of Arizona to construct certain federal-aid highway projects near Navajo, Arizona. In order for a bid to be considered it had to be accompanied by a performance bond prepared by the Arizona Highway Commission, hereinafter referred to as the Commission. The projects included the installation of guard-rails on certain curves. That part of the job was subcontracted to Arizona Petroleum and Asphalt Company, hereinafter referred to as Arizona Pete. When the work was completed Wells was paid in full, and it paid Arizona Pete for all labor and material involved in the installation of the guard-rails.

However, Arizona Pete became insolvent before paying plaintiff-appellee Martin Marietta Corporation (hereinafter referred to as Martin) who sold Arizona Pete the guard-rails. Martin brought this action against Wells and against co-defendant-appellant, Travelers Indemnity Company, the surety on Wells' performance bonds. For convenience we shall use the singular "bond" when referring to the bonds.

Wells filed an answer and counterclaim. The answer denied any legal relationship between Wells and Martin, pleaded both laches and the statute of limitations, and denied that Martin was a creditor covered

by the bond. The counterclaim alleged that the conditions in the bond were broader than the pertinent statutes and regulations, and were therefore invalid, and that the enforcement of those provisions deprived Wells of equal protection of the laws, and of its property without due process of law. Martin moved for summary judgment, and this was granted. Judgment was entered against both defendants after a short cause hearing on the reasonable value of the material actually used on the projects, and for attorney's fees. Both defendants appealed.

The material part of the bond reads as follows:

"We, Wells-Stewart Construction Co., Inc., as principal, and the Travelers' Indemnity Company, as surety, are held firmly bound to the State of Arizona in the penal sum of $1,062,297.25. WHEREAS * * * Wells-Stewart Construction Co., Inc., * * * has contracted * * * to construct * * * a certain highway * * *.

"THE CONDITIONS OF THIS BOND ARE SUCH that if the principal herein * * * shall promptly pay all * * * laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with material * * * then this obligation to be void, otherwise to remain in full force and effect.

"We further agree * * * to pay * * * a reasonable attorney's fee * * *.

"All rights and benefits of the above and foregoing bond shall inure to the benefit of any and all creditors of said principal and contractor for any and all claims * * * incurred for * * * materials * * * incurred in the performance of said contract, and such creditors may * * * maintain an action upon said bond in the name of the State of Arizona."

Appellants argue that Martin is a "materialman of a materialman," and not a materialman of a subcontractor, and there-fore not covered by the bond. Appellants base this position on the fact that Wells ordered the guard-rail from Arizona Pete by a "purchase order" which is a document ordinarily used to buy material rather than to contract for work. However, it is admitted that the purchase order was "for the furnishing and installation of 'Road Guard' (guard-rail) and guide posts C.I.P. (Complete In Place)." Labelling a contract "Purchase Order" does not make it any the less a contract. A document is what its contents make it, not what it is labelled. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798. A subcontractor is one who contracts for the performance of an act, with a person who has already contracted for its performance. Staley v. New, 56 N.M. 756, 250 P.2d 893. If Wells had contracted with Arizona Pete only for the furnishing of guard-rail which Wells intended to install itself, and if Arizona Pete had merely bought the guard-rail from Martin in order to resell to Wells, that would be a case of a "materialman of a materialman," and recovery would have to be denied. But the situation in the instant case is clearly one where Arizona Pete was a subcontractor, and Martin "supplied such subcontractor with material" so that Martin is covered by that provision of the bond.

Appellants contend that their liability, if any, is created by statute, and not by the performance bond which they signed. From this they deduce (a) that where the bond is broader than the statute authorizing it, liability is only as broad as the statute, and (b) that the one-year statute of limitations applicable to statute-created liability applies, instead of the six-year statute relating to liability under written instruments such as performance bonds.

The statute involved here is A.R.S. § 18–113, which provides that:

"* * * Should a bid satisfactory to the commission be received, it shall authorize the state engineer to let a contract to the lowest responsible bidder, upon the contractor giving such bond or bonds as are deemed necessary."

■ The argument that the liability in the instant case comes from the statute, rather than from the bond, is the result of the fallacious line of reasoning that if there had been no statute, appellants would not have signed any bond—that their signing of the bond therefore was involuntary and under duress. But they were not compelled to enter into the highway contract. They undertook it voluntarily.

We have examined appellants' authorities and find them inapplicable to the facts of the instant case.

While A.R.S. § 18–113 clearly authorizes—and even directs—the Commission to require a bond, it spells out no details of the bond's contents, and it would be a strain on the English language to hold that the act creates the liability. If it does, how can one determine its extent? We therefore hold that the liability in the instant case was created by the bond and not by the statute. It follows that the applicable statute of limitations is six years.

The terms of the regulations adopted by the Highway Commission in its "Administrative Procedure Act," Title 22, Art. III, Div. 1, Art. C, page 6, provide:

"Said bond shall be conditioned upon the faithful performance of the Contract and the payment of all labor, materials, and supplies *furnished therefor.* * * * The form of bond will be provided by the commission." [Italics ours.]

■ Appellants contend that Wells "paid for all labor materials, and supplies which *it furnished the state in connection with its 'faithful performance.'* " [Italics ours.] We do not consider this description of what Wells paid for, to be the same as the above-quoted regulation.

■ Appellants also argue that if the liability were not created by statute, then the Commission had no authority to determine the form of the bond, because the legislature cannot delegate its law-making powers to an administrative agency. As a general principle this is a correct rule. The applicability of the rule to the instant case

does not appear. Two cases are cited by appellants. In Crane v. Frohmiller, 45 Ariz. 490, 45 P.2d 955, this Court merely held that the legislature could not make an open-end appropriation allowing an administrative body to draw on the state's general fund, and could not delegate its law-making power to any other body. In State v. Marana Plantations, 75 Ariz. 111, 252 P. 2d 87, we upheld a trial court's striking down of a statute vesting the Board of Health with sweeping powers to promote the public health. We said that "The line of demarcation between what is a legitimate granting of power for administrative regulation and an illegitimate delegation of legislative power is often quite dim." At the same time we recognized that "the legislature sometimes cannot practically nor feasibly prescribe all administrative details, and such duties within limits may be left to the board." We hold that the detailed provisions of the bond required by bidders on highway construction are properly left to the Highway Commission which has the technical knowledge amid changing conditions to know what ought to be included in the bonds.

Wells had various alternatives to signing the bond. It could have refused to bid at all. It could have supplied its own form of bond, with a statement that it contained all of the provisions that the State had a right to insist upon. It could have conferred with the Commission and requested changes in the bond. It could have instituted legal action. Instead, Wells signed the bond, and now is trying to argue that it is not bound by its solemn obligation. We hold that, having signed the bond voluntarily, Wells must now live up to its contract.

■ Appellants contend that though the bond contains a provision protecting those who supply materials to a subcontractor, it also provides that the benefits of the bond shall inure only to the "creditors" of the principal of the bond, Wells. They cite Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 313 P.2d 393, and Jamison v. Franklin Life Insurance Co., 60

Ariz. 308, 136 P.2d 265, as holding that if there is a conflict between *the recital* and *the operative clauses* of a bond, the latter will prevail. The holdings in those cases are not applicable here, because in the instant case we are faced with an inconsistency between *two parts of the operative clause of the bond.* The recital clause of the bond in question is that part that follows the "WHEREAS"; the operative clauses of the bond are the paragraphs following "THE CONDITIONS OF THIS BOND ARE SUCH." A "recital" is the setting forth of some matter of fact, in a document, in order to explain the *reasons* for the transaction. A recital usually commences with the formal word "Whereas." Black's Law Dictionary (4th Ed.), page 1435. One operative clause of the bond specifically protects a person "who shall supply * * * subcontractors with material." The difficulty is that a subsequent operative clause, providing that creditors could sue on the bond, did not restate that subcontractors were included in the protection provided.

■ In construing contracts, the intent of the parties determines the meaning. Tyson v. Tyson, 61 Ariz. 329, 339, 149 P.2d 674. It is obvious that it was not intended to include a supplier of a subcontractor as one of the classes of persons protected by the bond, and then take away the protection by excluding such supplier from the classes of persons who would be permitted to sue on the bond. Such an interpretation would render the protective clause nugatory. We held, in Tyson v. Tyson, supra, that, in quoting Sec. 236 of Restatement of the Law, Contracts:

> "(a) An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect."

Cf. Webb Const. Co. v. Crane Co., 52 Ariz. 299, 310, 80 P.2d 698; Porter v. Eyer, 80 Ariz. 169, 173, 294 P.2d 661; and Ed Stearman & Sons, Inc. v. State ex rel. Union Rock & Material Co., 1 Ariz.App. 192, 400 P.2d 863.

■ Appellants argue that a holding that the bond covers a supplier of a subcontractor makes the requirement unconstitutional, and the bond invalid, because it takes the principal contractor's money without due process and denies him the equal protection of the laws. The reasoning is that the principal contractor is without warning that such coverage is provided by the bond, and that he is unable to protect himself against failure of subcontractors to pay for materials.

Appellants concede that the bond provisions "might somehow be justified if the principal contractors knew in advance that they might be liable to strangers." But the bond specifically so provides, and if these appellants did not know of that possibility, it could be only because they did not read the bond which they signed.

Appellants cite 16A C.J.S. Constitutional Law § 505 p. 309 for the proposition that a state must accord substantially equal and uniform treatment to all persons similarly situated. They do not claim that Wells was treated any differently from all the other contractors who bid on the same job. They complain that contractors bidding on state highway jobs are treated differently from those who bid on jobs for cities, counties, school districts, etc. We see no reason to hold that state projects must be handled in a way identical with city and county construction work.

■ Appellants argue that Martin was guilty of laches, and that if it had promptly and harshly kept after Arizona Pete, and had notified Wells that its bill for the guard-rail was unpaid, Wells would have protected itself (and Martin) by withholding payment from Arizona Pete. The facts show that notice was given to Wells about ten months after the materials were supplied, that this action was started approximately one year after the last material was supplied, and that during that period all attempts by Martin to collect from Arizona Pete were repulsed by the latter's repeated

statements that it had not yet been paid by Wells. No affidavits by appellants were filed, showing any reason why the delay of one year constituted laches. It is a well-known fact that creditors often believe such excuses of their debtors and hesitate taking harsh measures for fear of losing their future business. That, plus the fact that Martin was protected by a bond which it had every right to expect would be honored, is ample excuse for not starting its action earlier. Certainly it cannot be held as a matter of law that a delay of ten to twelve months is laches, where the job is one involving a huge combined state and federal project with all the red tape that often accompanies such work.

The liability of the principal contractor to make sure that subcontractors' suppliers are paid for the material they furnish is a salutory one. It is reasonable and desirable. It is impossible for such materialmen to protect themselves except by shipping C.O.D., since mechanics' liens are not permitted in public highway construction. Such projects usually involve millions of dollars. It is very undesirable, and frequently impossible, for a contractor to have to pay cash on delivery for his materials when it may be months before he collects state or federal funds. Most suppliers, therefore, must ship on credit and wait for payment until the contractor is paid. It is nearly impossible for suppliers to ascertain when the principal or subcontractors have been paid. Protection of such suppliers, therefore, is a useful provision in the bond. Without such provision, many materialmen would not care to sell the contractor, and the only ones left who could afford such risk would be the largest companies, who might—when smaller suppliers are thus eliminated—bid substantially higher for supplying the materials.

On the other hand, the principal contractor is not without means of protecting himself. He can demand from his subcontractors lists of material suppliers and the invoices involved. In Moore v. Builders' Material Co., 192 N.C. 418, 135 S.E. 113, 114, it was stated:

"There is no hardship for the contractor to obtain from the subcontractor, bills for all labor done on and all materials and supplies furnished for the work before he pays the subcontractor, for he knows his bond covers these accounts."

Having obtained all of the bills, he can secure permission from the suppliers to pay the subcontractors, or permission from the subcontractors to pay the suppliers. He can require receipted material bills from subcontractors before paying them. He can make his checks payable to both jointly. He can demand a performance bond from his subcontractors. He is not a man who has been subjected to unknown and unlimited liabilities to unknown suppliers without either warning or a method of protecting himself.

The actual situation is well-described in Dominion Culvert & Metal Corp. v. United States Fidelity & Guaranty Co., 238 S.C. 452, 120 S.E.2d 518, 92 A.L.R. 1244:

"It is now settled by the decisions of this Court that a contractor and the surety on his bond, given to secure payment for labor and materials furnished in the construction of a public improvement, whether the bond be required by statute or not, are liable not only for labor and material furnished to the contractor, but also for those furnished to a subcontractor. * * * If the contractor or his surety desire to protect themselves against unpaid claims of a subcontractor, it would be easy for them to require that the subcontractor provide adequate bond or other security which would indemnify them against any loss by reason of the subcontractor's insolvency. * * * The contractor and the surety on the bond are liable even though the principal contractor has paid the subcontractor."

Judgment affirmed, with directions that the trial court determine the reasonable value of the attorney's fees for services rendered in connection with this appeal.

STRUCKMEYER and LOCKWOOD, JJ., concur.