UNITED STATES of America for and on Behalf of the BOARD OF TRUSTEES OF the NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND et al.

v.

J. W. BATESON COMPANY, INC., et al., Appellants.

No. 75–2199.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1976.

Decided Jan. 28, 1977.

Rehearing Denied Feb. 16, 1977.

Certiorari Granted June 27, 1977. See 97 S.Ct. 2971.

Henry J. Capello, Washington, D. C., for appellants.

Donald J. Capuano, Washington, D. C., for appellees, Board of Trustees of the National Automatic Sprinkler Industry Pension Fund, et al. Glenn V. Whitaker, Washington, D. C., was on the brief for appellees.

Before WRIGHT and ROBB, Circuit Judges and GESELL,* United State District Judge for the District Court for the District of Columbia.

Opinion for the Court filed by District Judge GESELL.

Concurring opinion filed by Circuit Judge WRIGHT.

GESELL, District Judge:

This case arises under the Miller Act, 40 U.S.C. §§ 270a *et seq.*, and involves the scope of the payment bond which prime contractors are obliged to provide as surety for work done on federal construction. The District Court, Judge Aubrey E. Robinson, Jr., granted summary judgment on plaintiffs' claim against a Miller Act bond executed by defendant J. W. Bateson Co., Inc., which now appeals. We affirm.

The material facts are not in dispute. In August, 1971, Bateson contracted with the United States to build an addition to the Howard University Hospital. In accordance with the Miller Act, Bateson filed with the Government a payment bond for the protection of those furnishing labor or materials to the project. Bateson, as prime contractor, subcontracted with Pierce Associates for some of the work specified in the main contract. Pierce, in turn, contracted with the Colquitt Sprinkler Co., Inc. for part of this work, the installation of a sprinkler system as required by the contract

specifications. Colquitt then signed a collective bargaining agreement covering its workers on the job with the National Sprinkler and Fire Control Association, and Local 669 of that union. Due to financial difficulties Colquitt failed to turn over to the union both fringe benefit funds and union dues which it had withheld from wages of workers on the job, as required by its agreement with the union. The union trustees thereafter notified Bateson they were filing a claim against the Miller Act payment bond for the money owing. When payment was refused suit was brought in the District Court.

■■■ The Miller Act, enacted in 1935, requires all Government contractors to execute a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for" in a Government construction contract. 40 U.S.C. § 270a. Like the Heard Act which it replaced,[1] the Miller Act carried forward settled congressional policy to ensure that those who aided in the completion of Government projects would not be financially injured by the default of a contractor who happened to be low bidder for a contract.

■■■ In *MacEvoy Co. v. United States,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), the Supreme Court held that to be a proper claimant under a Miller Act bond one must have furnished labor or materials for a Government project pursuant to a contract with either the prime contractor or a subcontractor on the project. Noting that the Act does not define "subcontractor," the Court adopted a functional definition, stating:

> . . . a subcontractor is one who performs for and takes from the prime con-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The Heard Act, 28 Stat. 278 (1894), as amended 33 Stat. 811 (1905), 40 U.S.C. § 270, required that Government contractors file one bond. If a contractor defaulted the United States could sue on the bond with those who provided materials and labor intervening. But the United States had priority in any recovery. If the

United States did not sue, private parties had to wait six months before filing their own actions. The Miller Act was intended to provide greater protection to subcontractors, laborers, and materialmen by requiring two bonds, a performance bond for the Government and a payment bond for private parties, and by shortening the time before suit. *See* H.R.Rep. No. 1263, 74th Cong., 1st Sess. (1935).

tractor a specific part of the labor or material requirements of the original contract. . . . 322 U.S. at 109, 64 S.Ct. at 894.

Later, in *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), the Court endorsed the functional approach of *MacEvoy.* It held that the test for determining whether an entity was a subcontractor was "the substantiality and importance of his relationship with the prime contractor" because where a substantial relationship exists the prime contractor can adequately protect itself against loss. *Rich, supra*, at 123, 94 S.Ct. at 2162.

A comparison of the results in *MacEvoy* and *Rich* makes this test clear. In *MacEvoy* a supplier contracting with a materialman of the prime contractor could not claim against the bond because he did not have a contract with a subcontractor or perform any work on the job. However, a similar claim was allowed in *Rich* because while the supplier technically contracted with only a materialman, functionally the materialman was a subcontractor since he performed part of the original contract and the prime contractor was in a position to protect himself against any loss from the materialman's default. This functional approach emphasizes the view originally taken by the Court in *MacEvoy* when it highlighted the remedial nature of the Act. The Court said:

> The Miller Act, like the Heard Act, is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects. *MacEvoy Co. v. United States, supra* 322 U.S. at 107, 64 S.Ct. at 893.

In the case before us the Union's contract was with Colquitt which was technically a sub-subcontractor. While defendants concede that Colquitt itself could claim under

the bond since it had a contract with subcontractor Pierce, they claim Colquitt's employees cannot because they only had a relationship with a sub-subcontractor. As noted, this formalistic analysis was soundly rejected in *Rich.* The real question is whether Colquitt performed work provided for in the main contract and had such a relationship with prime contractor that the prime, Bateson, could have protected itself from Colquitt's default. If so, Colquitt is a subcontractor and its employees may claim against the payment bond.

■ Colquitt was installing a sprinkler system in the addition to the hospital. The work was specifically required by Bateson's contract with the Government and was an integral and significant part of that contract. The importance of this work is evidenced by the fact that Pierce itself hired Colquitt's employees to finish the job when Colquitt because of its financial difficulties could no longer perform.

The District Court found the relationship between Bateson and Colquitt "substantial and important." This is borne out by the nature of the work and the fact that it was performed over a substantial period of time. Moreover, it appears from the record that copies of Colquitt's payroll statement were submitted to Bateson.[2] Since Colquitt's work was part of the main contract, was performed on the job site, and was of such obvious importance, Bateson was in a position to protect itself from Colquitt's default by obtaining security through bond or otherwise. *See MacEvoy, supra* at 110, 64 S.Ct. 890. Colquitt, therefore, was a subcontractor under the Miller Act and the union trustees are proper claimants under the bond. *See United States v. Carter Coal*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

■ Appellant also asserts that plaintiffs waived their rights under the bond by not acting against Colquitt, as they might have under their contract, and that they are es-

---

2. Plaintiffs filed a request for the admission of the genuineness of documents "to the extent that they are the Contractor's Weekly Payroll Statements submitted by Colquitt Sprinkler Company, Inc. to the General Services Administration and/or J. W. Bateson Company, Inc. . . . " Defendants apparently never bothered to respond to these requests.

topped from asserting their claims. This argument is without merit. *See United States v. Glassman Construction Co.*, 397 F.2d 8 (4th Cir. 1968).

Affirmed.

WRIGHT, Circuit Judge, concurring:

I concur in the judgment of the court in this case. I am also in general agreement with the court's opinion. The Miller Act makes clear that a prime contractor on a public building shall furnish "[a] payment bond with a surety or sureties \* \* \* for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." 40 U.S.C. § 270a(a)(2) (1970). The Miller Act further provides:

> (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him[.] \* \* \*

40 U.S.C. § 270b(a) (1970). Thus the congressional intent is "to protect those whose labor and materials go into public projects" because such costs are not recoverable against the United States. *MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). Whether the labor and materials are furnished directly to the prime contractor or through a subcontractor or a sub-subcontractor is irrelevant as far as the protection provided by the Act is concerned. If the prime contractor wants to protect himself against loss caused by subcontractors, he can " 'secure himself against loss by requiring the subcontractors to give security by bond, or

otherwise, for the payment of those who contract directly with the subcontractors. . . .' " *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 123, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974), *quoting MacEvoy Co. v. United States, supra*, 322 U.S. at 110, 64 S.Ct. 890 (emphasis by the *Rich* Court). And if he permits subcontractors to further subcontract, such permission can be made contingent on similar security being provided by the sub-subcontractor.