573 P.2d 525

**ADVANCE LEASING & CRANE CO., INC., an Arizona Corporation, Appellant,**

v.

**DEL E. WEBB CORPORATION, an Arizona Corporation, Appellee.**

**No. 1 CA–CIV 3372.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 15, 1977.

Rehearing Denied Dec. 23, 1977.

## 452

Renaud, Cook & Videan by J. Gordon Cook, Robert M. Geiger, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Henry L. Timmerman, Jeffrey B. Smith, Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

On this appeal from summary judgment we are asked to determine whether appellant is entitled to recover rental charges for a crane used in the construction of a building for which appellee was the general contractor.

In 1974, the appellee, Del E. Webb Corporation (Webb) contacted Meyeres and Sons Crane Service, Inc., (Meyeres) to obtain necessary crane rentals for the construction of the Physics and Geology Building at Arizona State University. Webb's agreement with Meyeres provided that the crane to be supplied would be changed from time to time as the building took shape and the need arose for larger capacity cranes. In July of 1974 it was apparent that the 45 ton crane then on the construction site would require an extension in order for work to proceed on higher levels. Meyeres' arrangements to obtain the needed extension fell through. Meyeres informed Webb that it would rent a crane from another rental company until Meyeres obtained its own equipment. Webb had no objection as long as it was still billed according to the rate originally agreed upon for the 45 ton crane plus extension. Meyeres consented and informed Webb that Meyeres would arrange and pay for the temporary crane and absorb any loss.

Meyeres then leased a 125 ton crane from appellant, Advance Leasing & Crane Co., Inc. (Advance) to temporarily service the Webb project. This crane far exceeded the capacity necessary for the work to be done and the rental cost to Meyeres substantially exceeded the rates at which Meyeres billed Webb.

Advance's crane was on the ASU job for approximately ten days. All billings for the rental were made by Advance to Meyeres. Webb's construction supervisor directed the work done by appellant's crane on the job site. However, the record shows and counsel for Advance concedes that no contractual relationship existed between Advance and Webb.

Meyeres failed to pay Advance for rental of the 125 ton crane and Advance brought suit against both Meyeres and Webb. The trial court granted Webb's motion for summary judgment.

The record fails to show the existence of any genuine issue of material fact that would preclude summary judgment. Therefore, we must decide as a matter of law whether appellant was entitled to recover based upon the legal theories presented to the trial court.

Appellant first seeks recovery based upon a theory of *quantum meruit.* Appellant contends that it conferred a benefit resulting in unjust enrichment to Webb. We reject this contention.

It was undisputed that a contract existed between Meyeres and Advance whereby Meyeres was to pay Advance at a fixed rate for the rental of the crane. The doctrine of *quantum meruit* has no application where an explicit contract exists. *Brown v. Beck,* 68 Ariz. 139, 143, 202 P.2d 528, 530 (1949); *Ashton Co., Inc., Contractors and Engineers v. State,* 9 Ariz.App. 564, 570, 454 P.2d 1004, 1010 (1969). These cases are consistent with the applicable section of the Restatement of Restitution which reads as follows:

"§ 110 RESTITUTION FROM BENEFICIARY OF A CONTRACT WITH THIRD PERSON WHO HAS FAILED TO PERFORM.

"A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person."

The Arizona courts have made it clear that they will follow the sound reasoning of the Restatement in the absence of contrary Arizona law. *Waddell v. White,* 56 Ariz. 525, 109 P.2d 843 (1941).

Additionally, the theory of *quantum meruit* is inapplicable because Webb paid Meyeres the contractual price for use of the crane.[1] The fact that the contractual price between Webb and Meyeres fell far below the rate at which Meyeres promised to compensate Advance is immaterial. Webb gave consideration for the benefit received and thereby was not unjustly enriched. *Cf. Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150 (1966); *Gebhardt & Bros., Inc. v. Brimmel,* 31 Wis.2d 581, 143 N.W.2d 479 (1966).

*Quantum meruit* is an equitable remedy not warranted by the facts presented to the trial court. Webb did not contemplate incurring the cost of hiring a crane of a size that far exceeded its needs. Webb merely gave permission to Meyeres to substitute a crane at Meyeres' expense until Meyeres could bring in its own crane. Webb specifically conditioned its permission upon being billed at the original rental rates for the smaller crane. This was known to Advance at the time of its agreement with Meyeres. Meyeres had assumed the risk of making sufficient profit from remaining on the ASU job to make up its loss on the rental of the Advance crane. Likewise, Advance assumed the risk that Meyeres would be able to pay. This risk cannot now be shifted to Webb.

Appellant's second theory of recovery is based upon A.R.S. § 34–222(A) which provides that prior to construction of any public building in Arizona, the following bond shall be acquired by the contractor:

"2. A payment bond in an amount equal to the full contract amounts solely *for the protection of claimants supplying labor or materials to the contractor or his subcontractors* in the prosecution of the work provided for in such contract." (Emphasis added)

Webb acquired a bond pursuant to this statute and appellant seeks to maintain a claim on the bond as either (1) one who supplied a subcontractor with labor or materials or (2) one who supplied the contractor with labor or materials.

The first issue is whether Meyeres was a subcontractor on the Webb project. A "subcontractor" is not defined within Title 34 of the Arizona Revised Statutes. However, in *Tiffany Construction Co. v. Hancock and Kelley Construction Co.,* 24 Ariz. App. 504, 539 P.2d 978 (1975), this court set forth the following test to determine whether a party was a subcontractor or a materialman:

"(1) Does the custom in the trade consider the supplier a subcontractor or a materialman? [citations omitted.] (2) Are the items supplied generally available in the open market or are they 'customized'? [citations omitted.] (3) In determining whether the material is 'customized' do the plans and specifications call for a unique product, or are these specifications merely descriptive of what is to be furnished? [citations omitted.] (4) Does the supplier's performance constitute a substantial and definite delegation of a portion of the performance of the prime contract?" [citations omitted.] *Id.* at 510, 539 P.2d at 984.

Applying this test to Meyeres, we first note that Meyeres did not have a contractor's license. Furthermore, the record clearly reveals that persons in the crane leasing business consider themselves materialmen or equipment suppliers and not contractors. As to the second part of the test, there are large numbers of crane rental services available on the open market. The Webb project did not require any unique type of crane that would fall within the description in the third part of the *Tiffany* test. Any crane with sufficient capacity to

---

1. There was a factual dispute over the amount owed by Webb which was resolved in Webb's favor when the trial court dismissed Meyeres' cross-claim against Webb. *Advance Leasing &*

*Crane Co., Inc. v. Meyeres & Sons Crane Service, Inc.,* No. C–300140. (Superior Court of Maricopa County, June 13, 1975).

454

construct the building would have been acceptable. Finally, it is evident that the providing of crane services did not involve a substantial delegation of the performance of the prime contract. Therefore, we find that Meyeres was not a subcontractor. Having reached this conclusion, we hold that Advance has no claim under A.R.S. § 34–223 as a supplier of a materialman.

 We turn now to Advance's assertion that it is entitled to recover as a supplier of material and labor to the general contractor. Appellant urges us to construe that A.R.S. §§ 34–222 and 34–223 to create a cause of action for one who has no contractual relationship with the general contractor but who supplied equipment and labor directly on the job site pursuant to a contract with a materialman. Appellant stresses the fact that its equipment and operators were subject to the control of Webb while working at ASU.

Although A.R.S. § 34–223 does not expressly state that recovery on the bond is dependent upon the existence of a contract between the general contractor and the supplier, neither does it purport to create legal liabilities that would not exist absent the statute. The language of the statute presupposes an existing liability:

> "A. Every claimant who has furnished labor or material . . . shall have the right to sue on such payment bond for the amount, or balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final judgment for the sum or sums *justly due* him . . .." (Emphasis supplied)

The Arizona bonding statutes are patterned after their federal counterpart, the Miller Act.[2] The Miller Act is also silent concerning the requirement of whether a contract must exist between a supplier and the prime contractor. Nevertheless, the federal courts have interpreted these statutes to require a contractual relationship. *See MacEvoy Co. v. United States,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); *United States v. J. W. Bateson Co., Inc.,* 179

U.S.App.D.C. 325, 551 F.2d 1284 (1977). The basis for these decisions is the court's belief that it would create too great a risk to the prime contractor and his surety if liability exists to the contractor for the work of submaterialmen in such a remote relationship. We find the reasoning persuasive.

This court will not re-write contracts for the parties before it. Advance agreed to look to Meyeres for payment. The record contains no evidence of a direct contractual relationship between Advance and Webb. Therefore, Advance has no claim on the bond obtained by Webb pursuant to A.R.S. §§ 34–222 and 34–223.

The judgment is affirmed.

WREN, P. J., and EUBANK, J., concur.