597 P.2d 184

**B. J. CECIL TRUCKING, INC., an Arizona Corporation, Appellant,**

v.

**TIFFANY CONSTRUCTION COMPANY, an Arizona Corporation, Fireman's Fund Insurance Company, a California Corporation, Appellees.**

**No. 1 CA–CIV 4093.**

Court of Appeals of Arizona, Division 1, Department A.

April 3, 1979.

Rehearing Denied May 30, 1979.

Review Denied June 26, 1979.

Blake, Colter, Flickinger & Daudet, P. C. by Dwight C. Flickinger, Phoenix, for appellant.

Cunningham, Goodson & Tiffany, Ltd. by Noel Hebets, Paul S. Harter, Phoenix, for appellees.

### OPINION

WREN, Presiding Judge.

This appeal from a summary judgment challenges the finding of the trial court

that appellant, as a supplier of hauling services to a materialman on a group of state highway resurfacing projects, had no claim against the appellee contractor, Tiffany Construction Company, or its licensing bondsman, appellee Fireman's Fund. We affirm the judgment of the trial court.

The salient material facts are that Tiffany was awarded a contract to resurface three portions of public highway in northeastern Arizona. The resurfacing operation consisted in part of the application, with an asphalt sealer, of a rock material known as "Type C chips." Tiffany then entered into an agreement with Ray Hatch d/b/a Hatch Sand & Gravel for the latter to provide and deliver to the job sites the required Type C chips. Hatch in turn entered into an agreement with the appellant B. J. Cecil Trucking, Inc. by which Cecil provided trucks and drivers to Hatch on a rental basis, at a combined rate of $25.65 per hour, to deliver the Type C chips from Hatch's gravel pit to the job sites. Tiffany paid Hatch for the chips but Hatch did not pay Cecil for its services, which amounted to an alleged $17,422.08.

Cecil brought suit against Tiffany's contractor's licensing bond, a bond required of all licensed contractors pursuant to A.R.S. § 32–1152, basing its claim on subsection (D) of that statute, which reads in pertinent part:

> D. The bonds or deposit required by this chapter shall be in favor of the state for the benefit of any person covered by this subsection. The bond or deposit shall be subject to claims by the registrar of contractors for failure to pay any sum required pursuant to this chapter or by any person who, after entering into a construction contract with the principal is damaged by the failure of the principal to perform the contract or by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract. The person claiming against the bond or case deposit may maintain an action at law against the contractor and the surety or depository . . . . . (Emphasis added.)

It is Cecil's position that its claim is precisely described by the underscored language. It is appellees' position, on the other hand, that the legislature did not intend to accord a right of action under A.R.S. § 32–1152 to any supplier of labor or material beyond those who would be proper mechanics lien claimants with respect to a private construction contract under A.R.S. § 33–981, and that since it is clear that Hatch was a materialman rather than a subcontractor, he was not an "agent" pursuant to § 33–981(A) and (B) who could by ordering services from appellant create in appellant such a valid lien right.

This case is closely analogous in many of its aspects to *Tiffany Construction Company v. Hancock & Kelley Construction Company*, 24 Ariz.App. 504, 539 P.2d 978 (1975). In that case the appellee here, Tiffany, had a similar contract to resurface a public road and it contracted with one Kissinger to provide the necessary Type C chips. Kissinger in turn rented a crusher from Hancock & Kelley. When Kissinger failed to pay Hancock & Kelley, the latter brought suit against Tiffany and its payment bonding company, which had guaranteed payment of ". . . all laborers, mechanics, sub-contractors and materialmen and all persons who supply such laborers, mechanics, or subcontractors with material, supplies or provisions . . . ." 24 Ariz.App. at 507, 539 P.2d at 981 n. 2. This court, carefully distinguishing between a subcontractor and a materialman, held that Kissinger was a materialman and that since Hancock & Kelley was therefore a supplier to a materialman, rather than a subcontractor, it could not recover under the terms of the payment bond.

Both parties here cite and rely upon *Arizona Gunite Builders, Inc. v. Continental Casualty Company*, 105 Ariz. 99, 459 P.2d 724 (1969). In *Arizona Gunite* the plaintiff-appellant leased a welding machine to a contractor. When the contractor did not pay the rent due, Arizona Gunite brought suit against both the contractor and the contractor's licensing bonding company. At

that time A.R.S. § 32–1152(D) did not contain the phrase "or construction equipment on a rental basis" and Continental Casualty Co., the licensing bondsman, contended that the rental of equipment could not be the subject of a claim against the bond since the statute used only the words "labor or materials". Our Supreme Court disagreed and held that since Arizona Gunite furnished "labor or materials" to the contractor within the meaning of that phrase as used in A.R.S. § 33–981(A) and (B), it had a remedy against the contractor's licensing bond given pursuant to A.R.S. § 32–1152.

It is to be noted that, in contrast with the present case, the plaintiff in *Arizona Gunite* contracted directly with the contractor whose bond was in issue. That decision is important here because of the *in pari materia* relationship emphasized by our Supreme Court between that part of the licensing bond statute quoted above and the mechanics lien statute, A.R.S. § 33–981. The Court there explained:

Therefore, to properly construe § 32–1152 it must be read in the light of, and harmonized with the Mechanics' and Materialmen's Lien Law, §§ 33–981 et seq.

'Statutes which related to the same person or thing, or to the same class of persons or things, or which have a common purpose are in pari materia.' 82 C.J.S. Statutes § 366.

\* \* \* \* \* \*

That the act relating to contractor's bonds is in pari materia with the Mechanic's Lien Act is made clear by *United States Fidelity and Guaranty Company v. Hirsch*, 94 Ariz. 331, 333, 385 P.2d 211, 212, where we said:

' \* \* \* The clear intent of the legislature in enacting § 32–1152, supra, was to make sure that an election by a materialman to sue under A.R.S. 32–1152, supra, would not preclude him from proceeding under the materialman's lien law for any amount due in excess of the amount of the bond.'

105 Ariz. at 101, 459 P.2d at 726.

By the use of the term 'labor or materials' in § 32–1152 the legislature intended to encompass all the enumerated persons in § 33–981(A). In fact, paragraph B of the same section clearly indicates this:

[Statute omitted]

\* \* \* \* \* \*

By the legislature's own reference in this statute, the general term 'labor or materials' is intended to include the specific categories set forth in paragraph A. We believe that it was also intended to have such a definition in § 32–1152, since it is only by such interpretation that both Acts, Title 32, Chap. 10, and Title 33, Chap. 7, which are in pari materia, can be made to harmonize.

105 Ariz. at 102, 459 P.2d at 727.

Although the mechanics lien statute is, of course, inapplicable to public contracts, *Wells-Stewart Construction Co. v. Martin Marietta Corporation*, 103 Ariz. 375, 442 P.2d 119 (1968), Justice McFarland noted in *Arizona Gunite* that A.R.S. § 32–1152(D) is similar to the Miller Act, the federal statute requiring payment bonds of public contractors. *See* 40 U.S.C. § 270a and 270b. Arizona has a so-called "little Miller Act" with respect to public building and highway projects. A.R.S. §§ 34–221 through 34–225. These statutes, with respect to public contracts, parallel the "owner's agent" provisions of our mechanics lien law in that a payment bond required to be given by public contractors is "solely for the protection of claimants supplying labor or materials to the contractor *or his subcontractors* in the prosecution of the work provided for in such contract." (emphasis added) A.R.S. § 34–222(A)(2). The Arizona statute is, therefore, in accord with the general rule that suppliers to materialmen cannot recover under public contractors' bonds. *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). In Ashe, *Law of Public Improvement Contractor's Bonds* § 11, at 18 and 19 (1966), the author states:

But in all the seeming confusion and diversity of opinion regarding coverage afforded under contractor's surety bonds,

there is unanimity of opinion that suppliers who sell to materialmen who, in turn, resell to a prime or subcontractor, . . do not come within the protective provisions of such bonds, even though their language states them to be conditioned in favor of 'all persons.'

\* \* \* \* \* \*

The question was squarely raised in *McEvoy* [sic] *v. United States*, 322 U.S. 102 [64 S.Ct. 890, 88 L.Ed. 1163], under a Miller Act bond, whether the protection enured for the benefit of remote suppliers who had no direct contractual relations with either the prime or subcontractor, and the ruling was adverse to such claim. The documentation in this case is complete in its coverage of the distinctions between subcontractor and materialman, and while it construes only the Miller Act, it has great impact on the decisions of many state courts and is particularly persuasive in directing opinions along the same lines, especially in those jurisdictions whose courts incline to liberal interpretations of statutory bond law.

The policy against recovery by submaterialmen has been previously referred to and adopted by this court. *Advance Leasing & Crane Co., Inc. v. Del E. Webb Corporation*, 117 Ariz. 451, 454, 573 P.2d 525, 528 (App. 1977).

The evolution of the contractor's licensing bond statute is traced to some extent in *Employment Security Commission v. Fish*, 92 Ariz. 140, 375 P.2d 20 (1962); *see also United States Fidelity and Guaranty Company v. Hirsch*, 94 Ariz. 331, 385 P.2d 211 (1963), and *Porter v. Eyer*, 80 Ariz. 169, 294 P.2d 661 (1956). Reading *Arizona Gunite* together with these cases, we believe that, by enacting A.R.S. § 32–1152 in its present form, the legislature intended to grant a right of action against the contractor's licensing bond to three groups of claimants:

1) The Registrar of Contractors;

2) persons in a direct contractual relationship with the licensed contractor who are damaged by the contractor's failure to perform; and

3) persons who would be proper mechanics lien claimants under A.R.S. § 33–981 in respect to a private construction contract and persons who would be proper claimants under A.R.S. § 34–222(A)(2) in respect to a public construction project.

Considering the statute in perspective, we are unable to find within it any indication of an intent to expand the contractor's and bondsman's liability beyond the well-established limits of the mechanics lien law and the public construction payment bond statute. We also believe that when the legislature amended subsection (D) in 1973 by adding the language "or construction equipment on a rental basis", it basically had in mind bringing the statute into conformity with the decision in *Arizona Gunite*. Cecil argues that a construction of the act in favor of appellees creates a narrow and privileged class of materialmen, contrary to certain language in *Arizona Gunite*. However, limitations on liability under contractors' bonds have historically been governed by practical considerations relating to the nature of the business and the ability of the contractor to control his costs. *See MacEvoy v. United States* and *Tiffany v. Hancock & Kelley*. These limitations are well established and we do no more than relate them, on the basis of an *in pari materia* relationship, to the licensing bond statute.

There thus remains only the question of whether Hatch was a subcontractor or materialman under the four-part test laid down in *Tiffany v. Hancock & Kelley*. The test is:

(1) Does the custom in the trade consider the supplier a subcontractor or a materialman?

(2) Are the items supplied generally available in the open market or are they "customized?"

(3) In determining whether the material is "customized" do the plans and specifications call for a unique product, or are these specifications merely descriptive of what is to be furnished?

(4) Does the supplier's performance constitute a substantial and definite delega-

tion of a portion of the performance of the prime contract?

(citations omitted).   24 Ariz.App. at 510, 539 P.2d at 984.

 The facts in regard to Hatch's status are substantially identical with those in *Hancock & Kelley*, and appellant does not seriously argue the existence of any material distinction which would preclude judgment on this issue as a matter of law. Tiffany's knowledge that appellant was delivering the Type C chips to the job sites was of no consequence.  Hatch was concededly obligated under the terms of his contract to supply the material *at the job sites*. For the reasons set forth in the *Hancock & Kelley* case, we find that Hatch was a materialman rather than a contractor, and, accordingly, appellant has no cause of action under A.R.S. § 32–1152.

The judgment of the trial court is affirmed.

DONOFRIO and CONTRERAS, JJ., concur.