758 P.2d 149
**RAY ELECTRIC, INC.,**
Plaintiff–Appellee,

v.

**MERCHANTS BONDING COMPANY
(MUTUAL), Defendant–Appellant.**

No. 1 CA–CIV 9704.

Court of Appeals of Arizona,
Division 1, Department D.

June 28, 1988.

M. Douglas Petroff–Tobler, Phoenix, for
plaintiff-appellee.

Lewis and Roca by Susan M. Freeman,
Michael J. Holden, David L. Arrington,
Phoenix, for defendant-appellant.

## OPINION

BURTON M. APKER, Judge Pro
Tem.*

We address whether one prime contractor's[1] license bond, issued under A.R.S.
§§ 32–1152(A) and (B), is subject to a claim
by another prime contractor.

## FACTS

Brentwood Development, Inc. (Brentwood) owned and developed six residential
real estate projects (collectively referred to
as "projects"). A sole proprietorship, Gilbert Tanzer dba Gil Tanzer & Company
(Tanzer), was a licensed general contractor
working on the projects. *See* A.C.R.R. R4–
9–01(B), –03. Gilbert Tanzer, the sole proprietor of Tanzer, was also the president of
Brentwood.

Ray Electric, Inc. (Ray Electric) had a
direct contract with Brentwood to provide
electrical contracting services and materials to the projects. The contract referred
to Ray Electric as the "sub-contractor" and
Brentwood as the "contractor." The contract required Ray Electric to work to the
satisfaction of Brentwood and the architect. Ray Electric supplied its labor and
materials directly to Brentwood. It sent all

---

* Burton M. Apker was authorized to participate
in this case by the Chief Justice of the Arizona
Supreme Court pursuant to Ariz. Const. Art. VI,
§ 3 and A.R.S. §§ 12–145 to –147.

1. As used in this opinion, the term "contractor"
refers to anyone who constructs an improvement or supervises the construction of an improvement. *See* A.R.S. § 32–1101(A)(2). A
"prime contractor" is a contractor who contracts directly with the owner. A "first-tier subcontractor" contracts with the prime contractor.
Finally, a "second-tier subcontractor" contracts
with a first-tier subcontractor.

its invoices to Brentwood and received its payments from Brentwood.

Tanzer obtained a license bond in the amount of $15,000 in accordance with A.R. S. § 32–1152(B). Merchants Mutual Bonding Company (Merchants) was surety on Tanzer's license bond. When Brentwood failed to pay Ray Electric money allegedly owed, Ray Electric sued Merchants.[2] It alleged that Brentwood owed Ray Electric $48,787.68 on their contract. Ray Electric and Merchants filed cross motions for summary judgment concerning Merchants' liability on Tanzer's license bond. The trial court granted Ray Electric's motion and denied Merchants' cross motion, awarding Ray Electric judgment on Tanzer's license bond.

## DISCUSSION

To obtain a license, a residential contractor must furnish a bond (license bond) or cash deposit under A.R.S. § 32–1152(B). The license bond is subject to claims by persons furnishing labor, materials, or construction equipment:

> The bond ... is for the benefit of and subject to claims by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract involving a residential structure....

A.R.S. § 32–1152(E). The primary question on appeal is whether Tanzer's license bond was subject to a claim by Ray Electric.

■ The purposes of the licensing statutes are to control contractors and to protect those damaged by any contractor's failure to perform or to pay for labor and materials. *Rhodes v. Hirsch,* 5 Ariz.App. 583, 585–86, 429 P.2d 470, 472–73 (1967); *see also Continental Casualty Co. v. Grabe Brick Co.,* 1 Ariz.App. 214, 216, 401 P.2d 168, 170 (1965). The bond statutes are liberally interpreted to protect laborers, materialmen and the owner. *See Arizona Gunite Builders, Inc. v. Continental Casualty Co.,* 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969) (interpreting a contractor's license bond in light of mechanics' lien statutes, A.R.S. §§ 33–981 *et seq.*). However, there are limits on the coverage of the contractor's license bond when necessary to protect the contractor and its surety against unreasonable risk. *B.J. Cecil Trucking, Inc. v. Tiffany Constr. Co.,* 123 Ariz. 31, 34, 597 P.2d 184, 187 (App.1979); *see also* Annot., *Right of Subcontractor's Subcontractor or Materialman, or of Materialman's Materialman, to Mechanic's Lien,* 24 A.L.R. 4th 963, §§ 17, 18 (1983).

An example of the limitations placed on the coverage of contractors' bonds is found in *B.J. Cecil Trucking, Inc. v. Tiffany Constr. Co.,* 123 Ariz. at 31, 597 P.2d at 184. In *B.J. Cecil Trucking, Inc.,* this court held that a second-tier materialman[3] had no claim on the prime contractor's license bond. We stated that "limitations on liability under contractors' bonds have historically been governed by practical considerations relating to the nature of the business and the ability of the contractor to control his costs." *B.J. Cecil Trucking, Inc.,* 123 Ariz. at 34, 597 P.2d at 187. In *Advance Leasing & Crane Co. v. Del E. Webb Corp.,* 117 Ariz. 451, 573 P.2d 525 (App.1977), this court held that a second-tier materialman had no claim on the prime contractor's payment bond. The prime contractor furnished the payment bond under the Little Miller Act, A.R.S. §§ 34–221 *et seq.,* "solely for the protection of claimants supplying labor or materials to the contractor or his subcontractor in the prosecution of the work provided for in such contract." A.R.S. § 34–222(A)(2). The court found persuasive the interpretation by various federal courts of the Miller Act, 40 U.S.C. §§ 270a *et seq.:* "The basis for these decisions is the court's belief that it would

---

2. Ray Electric also listed Tanzer, Gilbert Tanzer and his wife, and Brentwood as defendants. Ray Electric apparently never served its complaint on Tanzer or on Gilbert Tanzer and his wife. The trial court granted Ray Electric a default judgment against Brentwood.

3. In this opinion, a "first-tier materialman" is one who contracts directly with a contractor or first-tier subcontractor. A "second-tier materialman" contracts with a first-tier materialman.

create too great a risk to the prime contractor and his surety if liability exists to the contractor for the work of submaterialmen in such a remote relationship." *Advance Leasing,* 117 Ariz. at 454, 573 P.2d at 528.

The Supreme Court explained this policy to limit coverage in a decision concerning the Miller Act. *See Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), cited in *B.J. Cecil Trucking, Inc.,* 123 Ariz. at 34, 597 P.2d at 187 and *Advance Leasing & Crane Co.,* 117 Ariz. at 454, 573 P.2d at 528. In *Clifford F. MacEvoy Co.,* the Supreme Court held that a Miller Act payment bond was not subject to a claim by a second-tier materialman. *Clifford F. MacEvoy Co.,* 322 U.S. at 107–08, 64 S.Ct. at 893–94. The Supreme Court explained that it would be difficult or impossible for a prime contractor to protect itself from liability to remote materialmen under a Miller Act payment bond:

> Congress cannot be presumed, in the absence of express statutory language, to have intended to impose liability on the payment bond in situations where it is difficult or impossible for the prime contractor to protect himself. The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. But this method of protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. Many such materialmen are usually involved in large projects; they deal in turn with innumerable sub-materialmen and laborers. To impose unlimited liability under the payment bond to those sub-materialmen and laborers is to create a precarious and perilous risk on the prime contractor and his surety.

*Clifford F. MacEvoy Co.,* 322 U.S. at 110–111, 64 S.Ct. at 895 (citations and footnotes omitted).

■ We conclude that Tanzer's license bond was not subject to Ray Electric's claim. To hold otherwise would expose Tanzer and Merchants to unreasonable risk. Prime contractors can protect themselves from claims brought by first- or second-tier subcontractors or first-tier materialmen. For example, prime contractors can make checks payable jointly to first-tier subcontractors and second-tier subcontractors or to first-tier subcontractors and their materialmen. Alternatively, prime contractors can demand performance bonds from first-tier subcontractors. *See Wells–Stewart Constr. Co. v. Martin Marietta Corp.,* 103 Ariz. 375, 380, 442 P.2d 119, 124 (1968) (holding that a materialman can recover against a prime contractor's performance bonds). However, Ray Electric is not a first- or second-tier subcontractor or a first-tier materialman. Ray Electric contracted directly with Brentwood. Tanzer had no way of protecting itself against claims by other prime contractors such as Ray Electric. *Cf. Stewart Carpet Serv. v. Contractors Bonding & Ins. Co.,* 105 Wash.2d 353, 715 P.2d 115 (1986) (holding that an upper-tier contractor cannot recover against a lower-tier contractor's bond).

Ray Electric contends that it was a proper claimant on Tanzer's license bond because it would have been a proper mechanics' lien claimant under A.R.S. § 33–981. Generally, persons who furnish labor or materials to the owner or the owner's agent have a right to perfect a mechanic's lien on the improvement. *See* A.R.S. § 33–981(A), (B). Ray Electric relies on this court's statement in *B.J. Cecil Trucking, Inc.,* 123 Ariz. at 34, 597 P.2d at 187, that a license bond is subject to claims by "persons who would be proper mechanics' lien claimants under A.R.S. § 33–981." *See also Norman S. Wright & Co. v. Slaysman,* 124 Ariz. 321, 323, 604 P.2d 252, 254 (1979). Merchants responds to this contention by pointing out that Ray Electric is outside Tanzer's chain of contract.[4]

---

**4.** "Chain of contract" refers to the contractual    line originating with the owner and extending

Only those who are both proper mechanics' lien claimants *and* within the principal's chain of contract, argues Merchants, can recover against the principal's license bond.

We agree with Merchants. Ray Electric's contention would lead to absurd results. All residential contractors must furnish license bonds. A.R.S. §§ 32–1152(B)(5), (6). More than one prime contractor and numerous subcontractors and materialmen may work on a complex construction project. Under Ray Electric's contention, all of those prime contractors' license bonds would be subject to claims by all the other prime contractors on the project. Additionally, all of those prime contractors' license bonds would be subject to claims by subcontractors and materialmen outside their chains of contract. However, prime contractors would be unable to protect themselves against claims by other prime contractors and parties outside their chain of contract by paying their contractual obligations and requiring payment bonds or by issuing joint checks. Our statement in *B.J. Cecil Trucking, Inc.* addressed claims on a prime contractor's license bond where the defendant prime contractor was the only contractor contracting directly with the owner. It did not address claims on one prime contractor's license bond by other prime contractors on the same project or by subcontractors or materialmen of other prime contractors.

Ray Electric also argues that Tanzer could have protected itself from Ray Electric's claim because Tanzer, as the general contractor, controlled Ray Electric's work. We reject Ray Electric's argument because · we conclude that, as a matter of law, the evidence in the trial court shows that Tanzer had no control over Ray Electric's work. In the trial court, Ray Electric's

only evidence of Tanzer's control was Merchant's response to an interrogatory: "Gil Tanzer advised Merchants that Gil Tanzer personally was the general contractor." In response to this evidence, Merchants submitted evidence that Ray Electric contracted directly with Brentwood, supplied labor and materials directly to Brentwood, worked to the satisfaction of Brentwood, sent invoices directly to Brentwood, and received payments directly from Brentwood.

The fact that the sole proprietor of Tanzer, Gilbert Tanzer, was also the president of Brentwood does not change our conclusion. Brentwood exercised control over Ray Electric and was able to protect itself against claims by Ray Electric. Although Gilbert Tanzer is the president of Brentwood, Tanzer the sole proprietorship had no legal right to exercise control over Ray Electric. Ray Electric contracted with Brentwood, not with its president, and it is to Brentwood that Ray Electric must turn for relief.

### CONCLUSION

In accordance with the foregoing, we reverse the trial court's grant of summary judgment and direct the trial court to enter summary judgment in favor of Merchants. We also deny Ray Electric's request for attorney's fees.

FIDEL, P.J., and KLEINSCHMIDT, J., concur.

---

vertically. Generally, the owner contracts with a general contractor, who contracts with first-tier subcontractors and first-tier materialmen. First-tier subcontractors, in turn, contract with second-tier subcontractors and first-tier materi-almen. A materialman to a first-tier subcontractor, for example, is in the general contractor's chain of contract. Every party entering into a separate contract with the owner establishes an independent chain of contract.