283 P.3d 45

WANG ELECTRIC, INC., an Arizona corporation, Plaintiff/Appellee/Cross–Appellant,

and

Aero Automatic Sprinkler Company, a Delaware corporation, Defendant/Appellee/Cross–Appellant,

v.

SMOKE TREE RESORT, LLC, an Arizona limited liability corporation, Defendant/Appellant/Cross–Appellee.

Beecroft, LLC, an Arizona Limited Liability Company; Adobe Paint, LLC, an Arizona Limited Liability Company; Adobe Drywall, LLC, an Arizona Limited Liability Company; Allied Acoustics, Inc., an Arizona Corporation, Defendants/Appellees,

v.

Smoke Tree Resort, LLC, an Arizona limited liability corporation, Defendant/Appellant.

Wang Electric, Inc., Plaintiff/Appellee,

v.

Adobe Drywall, LLC; Adobe Paint, LLC, Defendants/Appellants.

Beecroft, LLC; Adobe Paint, LLC; Adobe Drywall, LLC; K.A.I. Designs, Inc.; Smoke Tree Resort, LLC; Aero Automatic Sprinkler Co., Defendants/Cross–Appellees,

v.

Allied Acoustics, Inc., an Arizona corporation, Defendant/Cross–Appellant.

Nos. 1 CA–CV 11–0387, 1 CA–CV 11–0494.

Court of Appeals of Arizona, Division 1, Department A.

July 31, 2012.

Mariscal Weeks McIntyre & Friedlander, PA By Scott A. Holcomb, Paul S. Ruderman, Phoenix, Attorneys for Wang Electric, Inc.

Jennings Haug & Cunningham, LLP By Edward Rubacha, Phoenix, Attorneys for Aero Automatic Sprinkler Company.

Gust Rosenfeld, PLC By Frank S. Tomkins, Scott A. Malm, Phoenix, Attorneys for Smoke Tree Resort, LLC.

Raymond Greer & Sassaman, PC By Randy L. Sassaman, Phoenix, Attorneys for Beecroft, LLC.

Wong Fujii Carter, PC By Jim Y. Wong, Ben J. Himmelstein, Matthew Klopp, Phoenix, Attorneys for Adobe Drywall, LLC; Adobe Paint, LLC.

Curtis Ensign, PLLC By Curtis D. Ensign, Phoenix, Attorneys for Allied Acoustics, Inc.

## OPINION

TIMMER, Judge.

¶ 1 These consolidated appeals stem from three consolidated lawsuits concerning a construction dispute among a property owner, a tenant, a general contractor, and six subcontractors involved in improving restaurant space at a Paradise Valley, Arizona resort. Smoke Tree Resort, LLC ("Smoke Tree"), the owner of the property, appeals from superior court judgments awarding damages to six subcontractors on their claims for unjust enrichment. Subcontractors Wang Electric, Inc. ("Wang"), Aero Automatic Sprinkler Company ("Aero"), and Allied Acoustics, Inc. ("Allied") cross-appeal from the superior court's judgment invalidating their mechanic's liens on Smoke Tree's property and dismissing their lien foreclosure actions. Subcontractors Adobe Drywall, LLC and Adobe Paint, LLC (collectively "Adobe") appeal from the court's judgment invalidating their mechanic's liens on the leasehold interest in the restaurant and dismissing their lien foreclosure actions. For the reasons that follow, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 Smoke Tree entered a lease agreement in October 2007 with REM on Lincoln, LLC ("REM") for rental of restaurant space at Smoke Tree's resort property. The leasehold term was for ten years, and REM had the option to extend the term for an additional five years. The lease required REM to remodel the restaurant in accordance with plans approved by Smoke Tree. Although REM was charged with organizing the remodel, the lease required Smoke Tree to reimburse REM up to $840,000 in remodeling expenses. REM was required to pay all costs and expenses greater than $840,000.

¶ 3 In January 2008, REM hired K.A.I. Designs Inc. ("KAI") to serve as general contractor on the restaurant remodel. Their

agreement called for total construction costs of approximately $2,000,000 to be paid in monthly progress payments. KAI then entered in subcontract agreements with, among others, (1) Wang, to provide electric and lighting fixtures and installation for $240,140, (2) Aero, to provide fire suppression systems for $48,554, (3) Allied, to install an acoustical ceiling for $11,267.94, (4) Beecroft, LLC ("Beecroft"), to provide excavation services for $26,710, and (5) Adobe, to provide drywall and paint material and services for $62,127 (drywall) and $22,426 (paint). The subcontracts required KAI to pay the subcontractors and did not refer to REM or Smoke Tree.

¶4 As the work progressed, the subcontractors submitted periodic invoices to KAI. KAI then submitted these payment applications for approval first to REM and then to Smoke Tree. Once Smoke Tree approved the invoices, Smoke Tree issued payments directly to KAI for disbursement to the subcontractors, despite the lease language calling only for reimbursement of REM's costs. A declaration from David Aboud, the president of KAI, reflects Smoke Tree paid approximately $790,000 to KAI.[1]

¶5 Near the end of April 2008, progress payments stopped. Wang, Aero, Beecroft, and Allied then filed mechanic's liens on Smoke Tree's property for the billed value of the work performed but not compensated (the "Uncompensated Work"). Adobe filed mechanic's liens on REM's leasehold interest in Smoke Tree's property for the billed value of Adobe's Uncompensated Work.

¶6 In December 2008 and February 2009, respectively, Wang and Adobe filed separate, later-consolidated lawsuits against REM, KAI, Smoke Tree, and the other subcontractors, among others. Each of the other sub-

contractors filed a cross-claim against REM, KAI, and Smoke Tree. Although the details of the claims varied, all six subcontractors sought damages for breach of contract against KAI, sought to foreclose their mechanic's liens, and in the alternative sought a money judgment against REM and Smoke Tree for unjust enrichment.

¶7 All subcontractors except Allied eventually moved for summary judgment against KAI on the contract claim and against Smoke Tree on the mechanic's lien foreclosure and unjust enrichment claims. KAI did not oppose the motions, but Smoke Tree responded and filed cross-motions for summary judgment. After briefing and argument, the court granted summary judgment in favor of Smoke Tree on each mechanic's lien claim, reasoning "that because the requirements for a mechanic lien were not strictly followed, there is no valid lien." But the court granted summary judgment in favor of each subcontractor and against Smoke Tree on the unjust enrichment claims, ruling "[i]t would be unjust for Smoke Tree to retain the benefits of improvements to its property without compensating the subcontractors for their work."[2]

¶8 After denying Smoke Tree's motion for reconsideration, the court entered judgment invalidating each mechanic's lien at issue and awarding each subcontractor a money judgment on the unjust enrichment claims for the billed value of the Uncompensated Work. The court also awarded prejudgment interest beginning as of December 22, 2009, the date the court entered its order granting summary judgment against Smoke Tree for unjust enrichment. Although the subcontractors requested attorneys' fees pursuant to Arizona Revised Statutes ("A.R.S.") section

---

1. Adobe argues the declaration lacks foundation and is therefore insufficient to show that Smoke Tree paid any amounts to KAI. The record does not reflect that Adobe or any other subcontractor objected to the declaration before the superior court. Adobe has therefore waived this argument. *See Trantor v. Fredrikson,* 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent

extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.").

2. Allied later moved for summary judgment on its unjust enrichment claim, and Smoke Tree and Allied stipulated to entry of summary judgment for Allied in light of the court's earlier summary judgment rulings. The court also entered judgment against Allied on its mechanic's lien foreclosure claim.

12–341.01 (West 2012),[3] the court found that no party had prevailed and, "in [its] discretion," declined to award fees or costs. Smoke Tree then moved for a new trial or modification of judgment to eliminate the prejudgment interest award, which the court denied. These timely appeals and cross-appeals followed.

## DISCUSSION

### I. Smoke Tree's Appeal

¶ 9 Smoke Tree first argues the superior court erred by entering summary judgment in favor of the subcontractors on their unjust enrichment claims rather than entering judgment for Smoke Tree. We review de novo the court's grant of summary judgment and affirm only if, viewing the facts in the light most favorable to the party against whom judgment was entered, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); Ariz. R. Civ. P. 56(c)(1). Smoke Tree does not contend any genuine issues of material fact exist to preclude summary judgment. Instead, it argues it is entitled to judgment as a matter of law.

¶ 10 An unjust enrichment claim requires proof of five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 226 Ariz. 242, 251, ¶ 27, 245 P.3d 927, 936 (App.2011). In short, unjust enrichment provides a remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other. *Murdock–Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985)

(quoting *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196, 202 (App.1983)). The remedy is flexible and available when equity demands compensation for benefits received, "even though [the party] has committed no tort and is not contractually obligated to the [other]." *Id.* Because consideration of the fourth element described above is dispositive, we turn to that element.

¶ 11 Smoke Tree argues that any enrichment was justified because the benefits received were specified under the lease with REM, and Smoke Tree did not act improperly. The subcontractors respond the enrichment was unjustified because Smoke Tree retained the benefit of unpaid labor and materials for tenant improvements it required, knowing the subcontractors expected payment. The superior court reasoned the enrichment was unjustified because "Smoke Tree approved the construction plans for the restaurant which was an integral part of Smoke Tree's Resort."

¶ 12 The subcontractors rely on authority addressing situations in which a subcontractor is not paid for labor and materials by a general contractor, and payment is sought from the owner under a theory of unjust enrichment. These cases fall into two categories: ones in which the owner has fully paid the general contractor and ones in which the owner has not fully paid the general contractor. Our courts have held that recovery under a theory of unjust enrichment is not available in the former category, because the owner is not unjustly enriched if it fully paid its obligation. *A M Leasing Ltd. v. Baker*, 163 Ariz. 194, 198–99, 786 P.2d 1045, 1049–50 (App.1989); *Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 530–31, 683 P.2d 327, 329–30 (App.1984); *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 117 Ariz. 451, 453, 573 P.2d 525, 527 (App.1977).[4] But when the owner has failed

---

3. Absent material revision after the date of the events at issue, we cite a statute's current version.

4. Although the *Stratton* court rested its holding on the principle that unjust enrichment cannot apply against an owner when a contract exists between the general contractor and the subcontractor, 140 Ariz. at 530–31, 683 P.2d at 329–30,

the court relied on *Advance Leasing*, which also reasoned an owner is not unjustly enriched when it pays its contractual obligation. 117 Ariz. at 453, 573 P.2d at 527. Subsequent cases have clarified that the holding in *Stratton* necessarily hinges on the fact the owner had fully paid the general contractor and was therefore not unjustly enriched. *Flooring Sys., Inc. v. Radisson Grp.*,

to fully pay its obligation, our courts have held that recovery for unjust enrichment is available because permitting the owner to retain the benefit without fully paying for it would be unjust. *Flooring Sys., Inc. v. Radisson Grp., Inc.*, 160 Ariz. 224, 227, 772 P.2d 578, 581 (1989); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 74, ¶¶ 27–28, 263 P.3d 77, 82 (App.2011); *Commercial Cornice & Millwork, Inc. v. Camel Constr. Serv. Corp.*, 154 Ariz. 34, 39–40, 739 P.2d 1351, 1356–57 (App. 1987); *Costanzo v. Stewart*, 9 Ariz.App. 430, 432–33, 453 P.2d 526, 528–29 (1969). Neither category of cases addresses the viability of an unjust enrichment claim against an owner for improvements made by its tenant—the situation before us. Nevertheless, the subcontractors argue the present case falls within the latter category because Smoke Tree failed to fully pay KAI for the tenant improvements, and the subcontractors were not fully paid.

¶ 13 Smoke Tree relies on the Colorado Supreme Court's decision in *DCB Construction Co., Inc. v. Central City Development Co.*, 965 P.2d 115 (Colo.1998), which involved a factual situation similar to the one here. In *DCB Construction*, an owner leased a building to a tenant for use as a gambling hall and authorized the tenant to make improvements as long as the owner approved all plans and retained the improvements upon lease termination. *Id.* at 117, 122. The tenant hired a contractor to make improvements, and the owner approved the plans. *Id.* at 117. The contractor did not place a lien on the premises. *Id.* at 117–18. The contractor and its subcontractors made significant improvements to the tenant's premises, but the tenant failed to pay for most of the work, defaulted on the lease, and vacated the building. *Id.* The contractor and subcontractors sued the owner for unjust enrichment. *Id.* at 118. After the owner and subcontractors settled, the matter proceeded to a bench trial, and the court found in favor of the contractor, awarding the contractor damages for monies unpaid by the tenant. *Id.*

¶ 14 The court of appeals reversed, and the Colorado Supreme Court affirmed that deci-

sion. *Id.* When considering whether it would be unjust for the owner to retain the benefit of the contractor's work without paying for it, the supreme court initially cited the general rule that when a non-owner contracts for improvements to the owner's property and then fails to pay, " 'the owner is not liable to the contractor or supplier unless he agreed to pay them.' " *Id.* at 121 (quoting 3 Dan B. Dobbs, *The Law of Remedies*, § 12.20(3) at 473 (2d ed. 1993)). This rule protects rights of choice and recognizes that ordinarily, an owner should not be effectively forced into a legal relationship with a third party. *Id.* The court then noted that Restatement of Restitution ("Restatement") § 110 (1937) provides, "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of performance by the third person." *DCB Constr.*, 965 P.2d at 121. Relying on the general rule and Restatement § 110, the court reasoned that the owner could not be held liable for the tenant's improvements merely because it owned the property and the contractor was treated unjustly by the tenant. *Id.* According to the court, "an injustice that warrants the court's imposition of the remedy of restitution must rest not only in the loss to the contractor, but also in the conduct of the owner." *Id.* The court concluded that "injustice" necessarily contemplates "some form of improper conduct by the party to be charged" restitution. *Id.* at 121–22. Consequently, the court held that "for a tenant's contractor to attach liability upon an owner of property under an unjust enrichment claim, the contractor must be able to show that the landlord has engaged in some form of improper, deceitful, or misleading conduct." *Id.* at 123. Otherwise, the court reasoned, a landlord would be cast in the role as an insurer for any tenant who contracts for improvements to the leasehold. *Id.* at 122. The court decided the building owner's active role in construction of the improvements and its contractual right to retain the improvements did not make its retention of those improvements without payment to the contractor unjust. *Id.* at 123.

*Inc.*, 160 Ariz. 224, 226, 772 P.2d 578, 580      (1989).

¶ 15 We agree with and adopt the holding in *DCB Construction*. First, the holding aligns with our general rule that a subcontractor lacking privity of contract with an owner cannot recover a personal judgment against that owner for unpaid work regardless of the existence and enforceability of a mechanic's lien. *Keefer v. Lavender*, 74 Ariz. 24, 25–26, 243 P.2d 457, 458–59 (1952). Second, like the *DCB Construction* court, Arizona courts follow Restatement § 110. *Advance Leasing*, 117 Ariz. at 452–53, 573 P.2d at 526–27; *Creative Learning Sys., Inc. v. State*, 166 Ariz. 63, 65, 800 P.2d 50, 52 (App. 1990). Third, hinging an owner's liability for tenant-contracted improvements on the owner's conduct comports with the Arizona-adopted principle that unjust enrichment should not be used to saddle entities with expenses they chose not to incur. *Blue Ridge Sewer Improvement Dist. v. Lowry & Assocs., Inc.*, 149 Ariz. 373, 377, 718 P.2d 1026, 1030 (App.1986). Other courts and authorities are in agreement.[5]

¶ 16 Applying our holding to the record before us, we conclude the superior court erred by ruling that Smoke Tree's retention of the tenant improvements would be unjust unless it pays the amounts owed to the subcontractors. Although Smoke Tree required REM to make tenant improvements and agreed to reimburse REM for a substantial amount of its expenses, no evidence suggests Smoke Tree engaged in improper conduct, and the subcontractors do not allege improper conduct. For example, Smoke Tree did not directly engage KAI to construct tenant improvements and then withhold payment, knowing it would affect payment to the subcontractors. *Cf. Flooring Sys.*, 160 Ariz. at 226–27, 772 P.2d at 580–81 (concluding unjust enrichment available as remedy for subcontractor to collect monies owed by general contractor for tenant improvements when owner withheld final payment to general contractor because subcontractors had not been paid); *Costanzo*, 9 Ariz.App. at 432–33, 453 P.2d at 528–29 (holding owner liable for unjust enrichment when he hired contractor to improve home and assured subcontractor that money was available to pay subcontractor). The superior court reasoned the enrichment is unjust because Smoke Tree approved the improvement plans. But approving plans to alter property is a right typically retained by any property owner and cannot be deemed improper. *See DCB Constr.*, 965 P.2d at 122 (concluding owner's involvement with approving plans that would affect owner's property cannot be considered unjust). Finally, the lease terms requiring REM to improve the restaurant and obligating Smoke Tree to reimburse REM up to $840,000 was a matter between landlord and tenant—not landlord and tenant's subcontractors—and could not have misled KAI or the subcontractors. In short, if we hold that Smoke Tree is liable to the subcontractors for unjust enrichment under these circumstances, we would essentially make Smoke Tree and all similarly situated property owners unwitting guarantors of their tenants' contracts for improvements. A claim for unjust enrichment does not stretch this far.

¶ 17 For these reasons, we hold that a contractor hired by a tenant to make improvements to leasehold premises, or subcontractors retained by that contractor, can recover unpaid monies for making tenant improvements from the property owner only when that owner has engaged in improper conduct.[6] Applying this holding, the superior court erred by concluding Smoke Tree is liable to the subcontractors under a theory

---

5. *See Hayes Mech., Inc. v. First Indus., L.P.*, 351 Ill.App.3d 1, 285 Ill.Dec. 599, 812 N.E.2d 419, 429 (2004) (holding contractor had no unjust enrichment claim against owner for unpaid tenant improvements absent improper conduct by owner); *Graves v. Berkowitz*, 15 S.W.3d 59, 64 (Mo.Ct.App.2000) (concluding landlord must bear some fault or have an agency relationship with tenant in order for contractor to have unjust enrichment claim against landlord for improvements made at tenant's behest).

6. This court has previously stated that "the doctrine of unjust enrichment has no application to the owner where an explicit contract exists between the subcontractor and the prime contractor." *Stratton*, 140 Ariz. at 531, 683 P.2d at 330. We disagree with this sweeping language in favor of our holding today.

of unjust enrichment. We therefore reverse the judgment insofar as it awards damages with interest against Smoke Tree and remand to the superior court with instructions to enter summary judgment in favor of Smoke Tree on the unjust enrichment claims. In light of our holding, we need not address Smoke Tree's challenge to the court's assessment of prejudgment interest.

## II. Cross-appeals

### A. Mechanic's liens

¶ 18 All subcontractors except Beecroft[7] argue the superior court erred by entering summary judgment in favor of Smoke Tree on their complaints to foreclose the mechanic's liens. The court ruled without elaboration that the liens were invalid because the subcontractors failed to strictly follow the requirements for imposing them. We review the court's ruling de novo. *Orme Sch.,* 166 Ariz. at 309, 802 P.2d at 1008.

¶ 19 Arizona's mechanic's liens statutes, A.R.S. §§ 33–981 to –1008 (West 2012), protect laborers and materialmen (collectively, "Laborers"), who generally lack privity of contract with a property owner, by providing them with a lien on real property for the amount of labor and materials supplied and by allowing them to pursue remedies directly against the owner. *United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.,* 197 Ariz. 479, 484, ¶ 26, 4 P.3d 1022, 1027 (App.2000); *Stratton,* 140 Ariz. at 531, 683 P.2d at 330. A Laborer pursing lien rights must serve the owner with a written preliminary notice of the lien within twenty days of the date the Laborer commenced furnishing labor or supplying materials to the jobsite. A.R.S. § 33–992.01(B), (C). This notice provides the owner an opportunity to take measures to protect itself. A.R.S. § 33–992.01(C); *Delmastro & Eells v. Taco Bell Corp.,* 228 Ariz. 134, 139–40, ¶ 13, 263 P.3d 683, 688–89 (App. 2011). To perfect and later foreclose a lien, the Laborer must record a notice and claim of lien with the appropriate county recorder after completion of work on the property and serve a copy on the owner. A.R.S. § 33–993(A). Unless the Laborer files an action to foreclose the lien, it expires after six months. A.R.S. § 33–998(A). With this framework in mind, we review the propriety of the summary judgments entered against the subcontractors.

### 1. Wang

#### a. REM as agent of Smoke Tree

■ ¶ 20 A Laborer may record a lien on property only when it performed work or supplied materials at the "instance" of the property owner or the owner's agent. A.R.S. § 33–981(A). Smoke Tree asserts Wang's lien against its interest in the property is invalid because neither Smoke Tree nor anyone serving as its agent requested improvements to the restaurant. In a related argument, Smoke Tree contends Wang's lien is invalid because Wang never served REM as "owner" with a preliminary twenty-day lien notice. Wang counters REM was Smoke Tree's agent because the lease required REM to remodel the restaurant pursuant to plans and specifications approved by Smoke Tree. For this reason, Wang asserts it properly served Smoke Tree with a preliminary twenty-day lien notice and subsequently recorded a lien against Smoke Tree's ownership interest.

■ ¶ 21 A Laborer may not enforce against an owner a lien for work or material requested by a tenant unless the tenant acted as the owner's agent. *DeVry Brick Co. v. Mordka,* 96 Ariz. 70, 71, 391 P.2d 925, 926 (1964); *Bobo v. John W. Lattimore Contractor,* 12 Ariz.App. 137, 139, 468 P.2d 404, 406 (1970). In *DeVry Brick,* the supreme court addressed whether such an agency relationship existed when a lease term required the tenants to make extensive improvements to the leased premises pursuant to plans approved by both owner and tenants. 96 Ariz. at 70–71, 391 P.2d at 925–26. The court held that this mandatory lease term "created an agency relation between the lessors and the lessees for the purposes of the lien laws," thereby permitting the materialmen in that case to foreclose their liens against the property owner's interest. *Id.* at 72, 391 P.2d at

---

7. Beecroft did not appeal entry of summary judgment on its mechanic's lien foreclosure action.

Therefore, we do not review the propriety of that summary judgment.

926; *see also Bobo,* 12 Ariz.App. at 140, 468 P.2d at 407 (holding agency created for purposes of lien statutes when lease requires tenant to make substantial improvements to leased property); *Fagerlie v. Markham Contracting Co.,* 227 Ariz. 367, 372, ¶ 18, 258 P.3d 185, 190 (App.2011) ("Arizona's 'lien statutes do not create actual agency, but merely make the contractor a statutory agent for the sole purpose of securing the lien rights of the workman.'") (citation omitted).

¶ 22 Like the leases at issue in *DeVry Brick* and *Bobo,* the lease here required REM to extensively remodel the restaurant. Also, REM was obligated to make improvements in accordance with plans and specifications approved by Smoke Tree and use a contractor approved by Smoke Tree. Despite these similarities, Smoke Tree argues *DeVry Brick* and *Bobo* are inapplicable because the lease here explicitly provided that "no mechanic's or other lien for any ... work or materials [furnished to REM] shall attach to or affect [Smoke Tree's] interest in the [p]remises" and represented that the sole relationship between Smoke Tree and REM was as landlord and tenant. This disclaimer, however, contravenes the legislature's policy expressed in A.R.S. § 33–981(A) to permit liens against an owner's interest in property when work is performed or materials furnished at the instance of the owner or its agent. Because the lease establishes that REM served as Smoke Tree's agent for purposes of the lien statutes, the disclaimer cannot serve to invalidate Wang's lien. *See Liberty Mut. Fire Ins. Co. v. Mandile,* 192 Ariz. 216, 220, 963 P.2d 295, 299 (App.1997) (recognizing that contract provisions contrary to strong public policy are void). Consequently, and in light of our mandate to liberally construe lien statutes to protect Laborers' interests, *Fagerlie,* 227 Ariz. at 371, ¶ 13, 258 P.3d at 189, we conclude Smoke Tree could not defeat the statutory agency relationship with REM by including self-serving language to that effect in the lease.

¶ 23 Pursuant to the holdings in *DeVry Brick* and *Bobo,* we hold the improvements

to the restaurant were made at the "instance" of Smoke Tree through REM, and Wang was entitled to have a lien against Smoke Tree's interest in the property. A.R.S. § 33–981(A). Additionally, Wang properly served Smoke Tree rather than REM with the preliminary twenty-day lien notice.[8]

### b. Timely service of lien

■ ¶ 24 To perfect a mechanic's lien, a Laborer, within a statutory time period, must "make duplicate copies of a notice and claim of lien and record one copy with the county recorder ... and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement." A.R.S. § 33–993(A). Wang recorded its notice and claim of lien on September 23, 2008; approximately three months later it simultaneously served Smoke Tree with the lien and the complaint seeking to foreclose it. Smoke Tree argues Wang failed to comply with A.R.S. § 33–993(A) because appending the notice and claim of lien to the complaint and then serving both on Smoke Tree failed to constitute service "within a reasonable time" after recording the lien.

¶ 25 Smoke Tree relies on *Old Adobe Office Properties, Ltd. v. Gin,* 151 Ariz. 248, 727 P.2d 26 (App.1986). In *Old Adobe,* the Laborer recorded a notice and claim of lien and served it on the owner along with a foreclosure complaint one week before expiration of the lien's six-month validity period. *Id.* at 249–50, 727 P.2d at 27–28. The court considered whether the Laborer's conduct constituted service "within a reasonable time after the recording of the lien," or at least created a fact question for a jury. *Id.* at 252, 727 P.2d at 30. The court noted that what is "reasonable" depends on the circumstances of the particular case but then held the Laborer's service in that case was not reasonable as a matter of law. *Id.* The court explained:

> served a preliminary twenty-day lien notice on Smoke Tree because REM was not Smoke Tree's agent for purposes of the lien statutes.

---

8. For these same reasons, we reject Smoke Tree's arguments that (1) Aero had no right to impose a mechanic's lien against Smoke Tree's interest in the property, and (2) Aero improperly

A.R.S. § 33–998 provides that a lien recorded under the provisions of Article 6 "shall not continue for a longer period than six months after it is recorded, unless action is brought within such period to enforce the lien." Since the purpose of the notice requirement is to allow an owner an opportunity to protect himself and to investigate the claim, absent unusual circumstances, the notice requirement of § 33–993(A) will not be met merely by appending a copy of the notice and claim of lien to the complaint filed in an action to foreclose that very lien.

*Id.*

¶ 26 Smoke Tree characterizes the above-quoted language as meaning service of the notice and claim of lien with a complaint can *never* satisfy the "reasonable time" requirement of § 33–993(A), absent unusual circumstances. To the extent *Old Adobe* makes this holding, we disagree. The lien statutes do not mandate that any period of time pass between serving a lien and filing a foreclosure complaint. Thus, if the *Old Adobe* Laborer had served its complaint on the property owner along with the notice and claim of lien the day after recording the lien, service undoubtedly would have been within a reasonable time pursuant to § 33–993(A) regardless of the simultaneous service of the complaint. The pertinent issue in *Old Adobe* was whether taking this course of action almost six months after the Laborer recorded the lien was sufficient under A.R.S. § 33–993(A).

¶ 27 We cannot say as a matter of law that Wang's service of the notice and claim of lien approximately three months after recordation was not within a reasonable time. The record before us does not set forth any facts bearing on Smoke Tree's ability to investigate the claim or protect itself after service of the lien. Moreover, Smoke Tree does not offer any argument why service of the lien approximately three months after recordation was not reasonable. In light of the record developed thus far, summary judgment on this issue is not appropriate.[9]

### c. Acknowledgment of lis pendens

■ ¶ 28 When a Laborer files a complaint to foreclose a mechanic's lien, it must also record a lis pendens to provide notice of the lawsuit. A.R.S. § 33–998(A) (citing A.R.S. § 12–1191). Smoke Tree argues Wang failed to comply with this requirement because the lis pendens it recorded was not acknowledged as required of an "instrument affecting real property." *See* A.R.S. § 33–411(A), (B) (West 2012). This court expressly rejected this argument in two recent decisions. *Fagerlie*, 227 Ariz. at 376, ¶¶ 45–48, 258 P.3d at 194; *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 390, ¶ 28 n. 9, 258 P.3d 200, 208 n. 9 (App.2011). We agree with the reasoning of these cases and therefore hold Wang was not required to include an acknowledgment in the lis pendens.

### 2. Aero
#### a. Preliminary lien notice

Smoke Tree incorporates by reference its arguments concerning Wang to assert the same argument against Aero but fails to assert any facts or arguments specific to Aero. For the same reasons we reject Smoke Tree's arguments concerning the propriety of summary judgment against Wang on this issue, we also reject them as applicable to Aero on this record.

¶ 29 As previously explained, to preserve lien rights, a Laborer must serve a preliminary twenty-day lien notice on the owner or reputed owner, among others, within twenty days after the Laborer first furnishes materials or services to the jobsite. A.R.S. § 33–992.01(B), (C). Smoke Tree contends Aero's notice identified REM as the owner, and therefore Aero could not impose a lien against Smoke Tree's interests. Aero counters it properly named Smoke Tree as the owner.

9. Smoke Tree incorporates by reference its arguments concerning Wang to assert the same argument against Aero but fails to assert any facts or arguments specific to Aero. For the same reasons we reject Smoke Tree's arguments concerning the propriety of summary judgment against Wang on this issue, we also reject them as applicable to Aero on this record.

¶ 30 Aero served three preliminary twenty-day lien notices. The first notice, dated February 20, 2008, named Smoke Tree as the owner or reputed owner/lessor. Aero served an amended notice on March 3, 2008 naming Robert McGrath, managing member of REM, as the owner. Four days later, Aero served another amended notice naming REM as the owner. The latter two notices each bore a notation that "[t]his notice is being amended to correct the name and/or address of the owner." All three notices were later attached to Aero's notice and claim of lien.

■ ¶ 31 Smoke Tree's challenge to Aero's preliminary twenty-day lien notice is unclear. If Smoke Tree contends Aero never named Smoke Tree as owner in a notice, it is mistaken. To the extent Smoke Tree argues the amended notices extinguished the original notice naming Smoke Tree as the owner and thereby voided the later notice and claim of lien, we reject that argument. Section 33–922.01(B) requires service on the owner to permit it to investigate the claim and promote dialogue among affected parties to resolve payment issues and avoid "costly work stoppages, mechanics' lien foreclosure sales, and double payments by the owner.'" *Delmastro*, 228 Ariz. at 139–40, ¶ 13, 263 P.3d at 688–89 (citation omitted). Aero's service of the initial notice on Smoke Tree fulfilled that purpose. We are not aware of any authority, and Smoke Tree does not cite any, supporting a conclusion that a Laborer's amendment to a notice to name other reputed owners, thereby increasing the likelihood the true owner is served, extinguishes prior notices. Construing § 33–992.01(B) liberally to protect Laborers' interests, *Fagerlie*, 227 Ariz. at 371, ¶ 13, 258 P.3d at 189, we decide a Laborer may "cover its bases" by serving multiple preliminary twenty-day lien notices naming different owners and reputed owners as long as such service is timely. Because the initial preliminary twenty-day notice placed Smoke Tree on notice to investigate the claim, the purpose of the notice was fulfilled. Summary judgment against Aero on this basis was not appropriate.

### b. Legal description in notice and claim of lien

■ ¶ 32 A Laborer is required to state in a notice and claim of lien "[t]he legal description of the lands and improvements to be charged with a lien." A.R.S. § 33–993(A)(1). Aero provided the following description:

> THE R.E.M. RESTAURANT AT THE SMOKE TREE RESORT 7101 EAST LINCOLN DRIVE SCOTTSDALE, MARICOPA COUNTY, STATE OF ARIZONA. APN: 174 64 003 A—SMOKE TREE RESORT 865/15 CONTAINED IN EXHIBIT "A" AND INCORPORATED HEREIN BY THIS REFERENCE RECORDS OF MARICOPA COUNTY, STATE OF ARIZONA.

Smoke Tree argues this recitation fails as a "legal description" but does not explain how. Aero asserts listing the street address, the physical description of the property, and the county assessor parcel number, together with express incorporation of county records for that parcel number, was sufficient to comply with § 33–993(A)(1).

■ ¶ 33 A Laborer must substantially comply with the legal description requirement in order to perfect a lien and later foreclose it. *Smith Pipe & Steel Co. v. Mead*, 130 Ariz. 150, 151, 634 P.2d 962, 963 (1981). The lien statutes do not define "legal description," so we ascribe plain meaning to the term. *W. Corrs. Grp., Inc. v. Tierney*, 208 Ariz. 583, 587, ¶ 16, 96 P.3d 1070, 1074 (App.2004). To do so, we refer to an established dictionary. *Id.* at ¶ 17. Black's Law Dictionary 976 (9th ed. 2009) defines "legal description" as "[a] formal description of real property, including a description of any part subject to an easement or reservation, complete enough that a particular piece of land can be located and identified. The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat." Applying this definition, Aero's listing of the resort's street address and description of the restaurant were not sufficiently formal to comply with the requirement to list a legal description even though it identified the property. *See also Smith Pipe*, 130 Ariz. at 151, 634 P.2d at 963 (noting legislature amended § 33–993 in 1973 to remove language that

required description must be sufficient to identify the property in favor of current legal description requirement). But Aero's recitation of the assessor parcel number and the incorporation by reference of records associated with that parcel substantially complied with § 33–993(A)(1). We take judicial notice these publicly available records set forth the resort's legal description.[10] *See Jarvis v. State Land Dep't,* 104 Ariz. 527, 530, 456 P.2d 385, 388 (1969) (taking judicial notice of state agency records), *modified on other grounds,* 113 Ariz. 230, 550 P.2d 227 (1976). Summary judgment against Aero on this basis was therefore inappropriate.

### 3. Adobe

#### a. Survival of lien against leasehold interest

¶ 34 Unlike the other subcontractors, Adobe seeks to foreclose a lien only against REM's leasehold interest in the property. Smoke Tree argues Adobe stands in REM's shoes, and because REM no longer has a leasehold interest in the property, and Adobe never imposed a lien against Smoke Tree's ownership interest, Adobe's lien rights are extinguished. Adobe counters its lien survives termination of the lease and may be foreclosed.

¶ 35 Adobe relies primarily on *Hayward Lumber & Investment Co. v. Graham,* 104 Ariz. 103, 449 P.2d 31 (1968), to support its position. In that case, a landlord leased unimproved land to a tenant, who purchased supplies from Laborers to improve the property. *Id.* at 104–05, 449 P.2d at 32–33. After 90 percent of the improvements were completed, the landlord terminated the lease and took possession of the property and improvements. *Id.* at 105, 449 P.2d at 33. The Laborers filed liens against the property and improvements. *Id.* In a subsequently filed lawsuit, the superior court ruled that because the tenant did not serve as the landlord's agent in making the improvements, the liens were ineffective. *Id.*

¶ 36 On appeal, the supreme court agreed that because the improvements were made

solely at the instance of the tenant, the liens only could be foreclosed against the tenant's interests. *Id.* at 108, 449 P.2d at 36. But the court rejected the notion "that if no lien could attach to the [landlord's] interest in the realty, then there could be no lien at all, including any possible lien on the improvements thereon." *Id.* at 108–11, 449 P.2d at 36–39. The court examined A.R.S. § 33–981(A), which authorizes imposition of a lien on "any building, or other structure or improvement," and A.R.S. § 33–991(A) and (B), which provide such liens extend to the real property underlying the improvements, to conclude the legislature intended to permit Laborers to impose liens primarily on improvements and incidentally against the realty. *Id.* at 109–10, 449 P.2d at 37–38. The court then adopted decisions from courts in California and Oregon, which construed lien statutes similar to Arizona's, to conclude that when improvements are made to property solely at the instance of a tenant, Laborers may impose liens on the improvements even though they may not impose liens on the underlying realty. *Id.* at 110–11, 449 P.2d at 38–39. The court concluded "[i]t would be manifestly unjust to construe the mechanics' lien statute as denying a lien on improvements merely because such lien cannot extend to the land upon which the improvements are located." *Id.* at 111, 449 P.2d at 39. The court therefore reversed the judgment invalidating the liens against the improvements even though the tenant no longer had an interest in them. *Id.; see also id.* at 108, 449 P.2d at 36 (*citing English v. Olympic Auditorium, Inc.,* 217 Cal. 631, 640, 20 P.2d 946, 950 (Cal.1933) (holding Laborers' liens on building erected at tenant's behest and which tenant could not remove at will existed separately from land and survived lease termination)).

¶ 37 Smoke Tree argues *Hayward Lumber* is distinguishable because the improvements at issue were entirely erected by the tenant, while Adobe's improvements were made to a building owned by Smoke Tree. Because it is impossible to grant a lien against these im-

---

**10.** The records are available online at *Residential Parcel Information,* Maricopa County Assessor, http://mcassessor.maricopa.gov/Assessor/Parcel Application/Detail.aspx?ID=174–64–003–A (last visited July 11, 2012).

provements without also effectively imposing a lien against Smoke Tree's ownership interest, Smoke Tree asserts Adobe's lien must fail.

¶ 38 We agree with Smoke Tree that *Hayward Lumber* is distinguishable because it involved construction of a building entirely at the tenant's instance. The court's focus was deciding whether the lien on the building could survive even though the Laborers could not impose liens on the underlying land. *Hayward Lumber*, 104 Ariz. at 108–09, 449 P.2d at 36–37. The court did not address the viability of a lien on improvements made within a structure owned by a landlord who did not order the improvements.

¶ 39 Nevertheless, *Hayward Lumber* provides guidance on the issue before us. The court reiterated the long-held principle that "only the lessee[']s interests could be used to satisfy the mechanics' liens" and emphasized its holding struck a balance in protecting both Laborers and landlord-owners. *Id.* at 108, 110–11, 449 P.2d at 36, 38–39 (citing *Demund Lumber Co. v. Franke*, 40 Ariz. 461, 14 P.2d 256 (1932)). In *Demund Lumber*, the supreme court held in pertinent part as follows:

> It is undoubtedly the law in Arizona that only the interest of the party who causes the building to be erected or the materials to be furnished can be ordered sold to satisfy mechanics' or materialmen's liens, and where the owner of premises has leased them, a person furnishing material or doing labor for the lessee on the premises may have a lien against the particular estate of the lessee, but can have none against the owner's estate in the property unless it appears that the lessee is actually an agent of the owner, or as a matter of law is estopped from denying such agency.

40 Ariz. at 463, 14 P.2d at 256; *see also Mulcahy Lumber Co. v. Ohland*, 44 Ariz. 301, 303–04, 36 P.2d 579, 579–80 (1934) (relying on *Demund Lumber* to hold Laborer with lien against tenant-requested improvements could not foreclose lien against landlord's interest after lease termination absent showing of agency or estoppel).

¶ 40 We derive two principles from *Hayward Lumber* and *Demund Lumber*. First, a Laborer's mechanic's lien imposed solely against a tenant's interest in improvements made to leased premises survives termination of the lease if the landlord has no ownership interest in the improvements. *Hayward Lumber*, 104 Ariz. at 110–11, 449 P.2d at 38–39. In light of modern-day lease practices in which parties agree that the landlord has a reversionary ownership interest in improvements, as Smoke Tree and REM agreed in their lease, the *Hayward Lumber* holding likely will apply only to a limited number of situations. Second, the lien extinguishes if imposed against improvements in which a landlord has an ownership interest *unless* the tenant acted as the landlord's agent or the landlord is estopped from denying the agency. *Demund Lumber*, 40 Ariz. at 463, 14 P.2d at 256.

¶ 41 Applying these principles to this case, we decide Adobe's lien survived REM's lease termination because, as previously explained, *see supra* ¶¶ 20–23, REM served as Smoke Tree's agent for the purposes of the lien statutes. Because REM's leasehold estate no longer exists, however, Adobe's lien necessarily is one against Smoke Tree's interests. *See Trace Constr., Inc. v. Dana Barros Sports Complex, LLC*, 459 Mass. 346, 357, 945 N.E.2d 833, 841 (Mass.2011) ("As a general matter, a lien on a leasehold is extinguished when the rights of the lessee expire.").

### b. Preliminary lien notices

¶ 42 Smoke Tree argues the superior court properly entered summary judgment against Adobe because it failed to serve Smoke Tree with a preliminary twenty-day lien notice. The record shows Adobe Paint served such a notice on Smoke Tree, so summary judgment was inappropriate against Adobe Paint on this basis.[11] But the record also shows Adobe Drywall served a preliminary twenty-day notice on McGrath, REM's managing member, and did not serve a notice on Smoke Tree. Adobe Drywall con-

---

11. Smoke Tree does not argue the effect, if any, of Adobe Paint's failure to serve REM with a preliminary twenty-day notice, and that issue is not before us.

tends this service is sufficient to now foreclose its lien.

¶ 43 Section 33–992.01(B) requires a Laborer who may later impose a lien to "serve the owner or reputed owner" with the preliminary twenty-day notice. Substantial compliance with this provision is a "necessary prerequisite to the validity of any claim of lien." *Id.; MLM Constr. Co., Inc. v. Pace Corp.,* 172 Ariz. 226, 229, 836 P.2d 439, 442 (App.1992). The statute defines "owner" as the person "who causes a building, structure or improvement to be constructed, altered or repaired, whether the interest or estate of the person is in fee ... [or] as lessee." A.R.S. § 33–992.01(A)(3). By serving REM's managing member, Adobe Drywall properly served the "owner" against whose interests it later imposed a lien. We are not aware of any authority requiring a Laborer to serve a preliminary twenty-day lien notice on a landlord in order to later impose a lien against the tenant's estate merely because the tenant may later lose its leasehold interest. Construing § 33–992.01(B) liberally to protect Laborers' interests, *Fagerlie,* 227 Ariz. at 371, ¶ 13, 258 P.3d at 189, Adobe Drywall is not barred from foreclosing its lien because it did not serve a preliminary twenty-day notice on Smoke Tree.

### 4. Allied

¶ 44 The summary judgment entered against Allied is procedurally unique. Specifically, the superior court entered judgment against Allied on its mechanic's lien foreclosure claim even though Smoke Tree never sought judgment against Allied and the parties did not stipulate to one. Neither party made any arguments concerning Allied's lien, and the court explained only that all the subcontractors' liens failed to comply with the lien statutes. On appeal, Allied simply joins the briefs of the other subcontractors without making any argument specific to it, and Smoke Tree asserts we have "no basis to reverse." But we also have no basis to affirm. What's an appellate court to do? We reverse. Any judgment entered on Allied's mechanic's lien foreclosure claim must await a dispositive motion, stipulation, or trial.

### B. Attorneys' fees

¶ 45 All subcontractors except Beecroft challenge the superior court's refusal to award attorneys' fees pursuant to A.R.S. § 12–341.01(A) because they prevailed on their unjust enrichment claims. In light of our decision reversing summary judgment on the unjust enrichment claims, the subcontractors are no longer the prevailing parties on these claims. Their challenges to the attorneys' fees ruling are therefore moot, and we do not address them.

### ATTORNEYS' FEES ON APPEAL AND CROSS–APPEAL

¶ 46 All parties request an award of attorneys' fees pursuant to A.R.S. § 12–341.01(A) and/or A.R.S. § 33–998(B).

¶ 47 We deny Beecroft's request for fees pursuant to § 12–341.01(A) expended in the appeal, because Beecroft is not the successful party. We have discretion to award fees pursuant to § 12–341.01(A) in favor of Smoke Tree as against Beecroft because Smoke Tree is the successful party, and the unjust enrichment claim arises out of the contract between Beecroft and KAI. *See Schwab Sales, Inc. v. GN Constr. Co., Inc.,* 196 Ariz. 33, 37, ¶ 13, 992 P.2d 1128, 1132 (App.1998) (holding equipment lessor's unjust enrichment claim against general contractor arose from contract between general contractor and subcontractor-lessee who failed to make lease payments). We exercise our discretion to deny fees to Smoke Tree, however, because Beecroft only joined in arguments asserted by Adobe and did not cause Smoke Tree to expend any fees to separately address the summary judgment entered for Beecroft. Smoke Tree is entitled to taxable costs against Beecroft subject to its compliance with Arizona Rules of Civil Appellate Procedure ("ARCAP") 21(a). A.R.S. § 12–341.

¶ 48 We deny the fee requests of Smoke Tree, Wang, Aero, and Allied. Sections 12–341.01(A) and 33–998(B) provide us discretionary authority to award fees. Because all these parties are partially successful and partially unsuccessful, we exercise our discretion to deny the requests. *See Murphy Farrell*

*Dev., LLLP v. Sourant,* 229 Ariz. 124, 134, ¶ 38, 272 P.3d 355, 365 (App.2012). Likewise, applying the "totality of the litigation test," none of these parties are the "successful party" on appeal entitled to taxable costs because all are equally successful and unsuccessful. *Id.* at 134–35, ¶ 38, 272 P.3d at 365–66. Because Adobe ultimately prevailed before this court, however, we grant Adobe's request for attorneys' fees pursuant to § 33–998(B) subject to its compliance with ARCAP 21(a). Any application should reflect fees expended only on Adobe's cross appeal. We also award Adobe its costs on cross-appeal as against Smoke Tree.

## DISPOSITION

¶ 49 We reverse the entry of summary judgment in favor of the subcontractors on their claims for unjust enrichment and remand with directions for the court to enter summary judgment in favor of Smoke Tree on those claims.

¶ 50 We reverse the summary judgments entered against Wang, Aero, and Allied on their claims to foreclose mechanic's liens against Smoke Tree and remand for further proceedings.

¶ 51 We reverse the summary judgment entered against Adobe on its claim to foreclose mechanic's liens against Smoke Tree and remand with instructions to enter summary judgment in favor of Adobe on that claim. We further instruct the court to permit Adobe to apply for attorneys' fees on its mechanic's lien claims pursuant to A.R.S. § 33–998(B). We award Adobe its reasonable attorneys' fees and costs expended in its cross-appeal subject to compliance with ARCAP 21(a).

¶ 52 We deny Smoke Tree's request for attorneys' fees against Beecroft, but award Smoke Tree its taxable costs subject to compliance with ARCAP 21(a).

¶ 53 We deny all remaining requests for attorneys' fees and taxable costs.

## CONCLUSION

¶ 54 For the foregoing reasons, we reverse and remand with instructions.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and ANDREW W. GOULD, Judge.